937 F.2d 610
 UNPUBLISHED DISPOSITION
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Eugene ALEXANDER, Plaintiff-Appellant,
v.
Howard A. PETERS, III,** et al., Defendants-Appellees.
 No. 90-2626.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 2, 1991.*
Decided July 11, 1991.
 
 Before BAUER, Chief Judge, and FLAUM and RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 Eugene Alexander filed an action pursuant to 42 U.S.C. Sec. 1983 alleging that defendants violated his right to due process of law in conducting an inadequate hearing before imposing disciplinary segregation. The district court recognized a liberty interest in a hearing prior to imposition of disciplinary segregation, but held that the hearings given comported with the requirements of the due process clause. Accordingly, the court granted defendants' motion to dismiss.
 
 
 2
 The complaint arose out of two incidents involving Alexander in which disciplinary reports were issued. On May 9, 1989, Alexander was apparently placed in administrative segregation[1] and a day later a disciplinary report was issued charging him with insolence, disobeying a direct order, and unauthorized movement. While he was in segregation awaiting the disciplinary hearing, another disciplinary report was issued charging him with insolence and disobeying orders. On May 16, 1989, he received hearings on both reports. At the hearing on the first report, Alexander apparently discovered that the hearing investigator had interviewed witnesses, but the Adjustment Committee (the Committee) refused to inform Alexander of the substance of their statements. According to the district court, the Committee also refused to state the basis for its denial of Alexander's request for information. Alexander then refused to participate in the hearing and was found guilty of the charges. The Committee ordered the disciplinary action of segregation, but gave credit for the seven days served in administrative segregation and thus no additional time in segregation was required. At the second hearing it is not clear whether Alexander requested any witnesses. He maintains that he did request witnesses, but the Adjustment Committee Summary indicates that no witnesses were requested. Alexander offered a written defense to all the charges, but the Committee found him guilty on this charge as well and imposed four days of segregation.
 
 
 3
 On appeal, Alexander alleges that those hearings violated his due process rights because he was not allowed to call witnesses or to confront or cross-examine witnesses, and the written statement of reasons for the decision was insufficient to provide the basis for the Committee's decision. The first contention is not properly before this court on appeal because it was not presented to the district court. In his complaint, Alexander appeared to argue that the hearing was deficient because he was not allowed to call witnesses and because the Adjustment Committee refused to ask questions propounded by Alexander of witnesses at the hearing. Defendants responded to the complaint by arguing that the witnesses requested were called and were asked the questions submitted by Alexander. In response to the defendants' argument, Alexander declared:
 
 
 4
 52. Defendants have cited Wolff, supra, for the proposition that the right to call witnesses is a qualified right. The issue as to whether the Adjustment Committee in the case at bar called witnesses or should have called witnesses is not before this court nor was any such issue raised by Plaintiff in his Complaint.
 
 
 5
 53. Defendants have admitted that they asked the questions propounded by Plaintiff directed to material witnesses.... Based upon these set of facts the citing of Wolff, supra, for the proposition in which the Defendants have cited said case for is misplaced.
 
 
 6
 With those statements, Alexander disavowed any intention of asserting a claim based on failure to call or properly question witnesses. Faced with such clear assertions by Alexander, the court could not construe the complaint as raising such claims. Alexander cannot now assert those claims after informing the district court that he was not raising those issues.
 
 
 7
 We are left then with Alexander's claims that he was denied the opportunity to confront or cross-examine witnesses and his assertion that the written summary by the Committee was inadequate. The first question which must be answered in addressing these due process claims is whether a liberty interest is implicated. In Gilbert v. Frazier, No. 89-1180, slip op. at 2-3 (7th Cir. May 16, 1991), we held that the Illinois regulations regarding disciplinary violations punishable by segregation of seven days or less create a liberty interest. Alexander's claims are premised upon those same regulations and therefore also involve a liberty interest under the due process clause. Under Gilbert, an inmate must be given a hearing before he can be found guilty of a disciplinary violation and placed in disciplinary segregation. Moreover, that hearing must comply with minimal constitutional requirements set forth in Wolff v. McDonnell, 418 U.S. 539 (1974).[2] Alexander does not challenge the timing of the hearing, but argues that it failed to comply with the Wolff requirements.
 
 
 8
 Once a liberty interest is found, we must next determine whether Alexander states any claim for relief. As a result of the second hearing, Alexander was given four days of disciplinary segregation. If the hearing was in violation of the requirements of due process, Alexander might be entitled to damages for that time spent in disciplinary segregation. Regarding the first hearing, however, the disciplinary action taken by the Adjustment Committee was just to give him time spent in segregation. In other words, the Committee found him guilty and determined that segregation was the appropriate punishment, but gave him credit for time spent in administrative segregation. Alexander therefore did not spend any additional time in segregation as a result of the finding of guilt by the Committee. Even if he had been found innocent or the charge dropped before a hearing, Alexander would have spent the same time in segregation under the regulation allowing for administrative segregation--which is not challenged by Alexander. He thus cannot seek any damages relating to segregation on the first charge. The claim can nevertheless proceed because the complaint adequately alleges other bases on which this court may grant him some relief. First, if Alexander proves a violation of his right to due process, he may be granted the injunctive relief of getting the disciplinary report expunged from his record. This relief is not merely a nicety but is significant because a disciplinary report can adversely affect an inmate in a number of ways after the punishment has been served. See e.g. Wolff, 418 U.S. at 564-65 (discussing need for accurate written records of disciplinary proceedings because of collateral consequences of disciplinary actions). The regulations recognize that effect by requiring that the disciplinary report be expunged from the inmate's record if the inmate is found innocent of the offense. Alexander in fact alleges that defendants' actions have adversely affected him in areas such as his job, ability to freely move, and recreational opportunities. If he can demonstrate that those effects resulted from the determination of guilt rather than the administrative segregation, then he will be able to seek damages on those claims. These possibilities are sufficient to survive a motion to dismiss based on the failure to seek any relief that the court can award.
 
 
 9
 The final question is whether the hearings in this case afforded Alexander all the protections mandated by due process. As was mentioned, the only two issues properly on appeal concern the right to confront or cross-examine witnesses at the hearing and the right to a written statement of reasons for the disciplinary action.
 
 
 10
 Alexander claims that he was denied the right to confront witnesses at his hearings because the Committee refused to reveal to him the answers to questions propounded by him at the hearings. In Wolff, the Supreme Court addressed the issue and held that confrontation and cross-examination pose great hazards to institutional interests and should not be required by the Constitution; instead, the Court left the decision regarding cross-examination and confrontation to the sound discretion of the prison officials. 418 U.S. at 567-69. In a subsequent case, the Court made it clear that the inmate possessed no general right to confront and cross-examine witnesses, and that prison officials need not justify their denial of cross-examination or confrontation. Baxter v. Palmigiano, 425 U.S. 308, 322 n. 5. The Court then added that the record before it revealed no abuse of discretion. 425 U.S. at 323. Those cases indicate that Alexander's claim regarding the right to confront witnesses is meritless. Alexander does not have any general right to discover the testimony of witnesses and respond to it, and defendants are not required to justify their decision to refuse to allow him to confront the witnesses. Moreover, Alexander has not included any allegations that would demonstrate an abuse of discretion. Therefore, the district court properly dismissed this claim.
 
 
 11
 Alexander also asserts that the hearings deprived him of due process because the Adjustment Committee gave only a cursory written statement of reasons for its decisions and the evidence supporting its decisions. In Wolff, the Supreme Court held that due process requires that the factfinder at the hearing submit a written statement of the evidence relied on and the reasons for the disciplinary action taken. 418 U.S. at 564-65. Those written statements are necessary to protect inmates from collateral consequences that might result from a misunderstanding of the nature of the charges, and to provide a means of reviewing the decision. 418 U.S. at 565. The Court recognized the possibility that personal or institutional safety concerns might require the exclusion of certain evidence from the summary, but in those cases the factfinder must acknowledge that omission in the statement. 418 U.S. at 565.
 
 
 12
 In this case, the Committee provided rather cursory statements in support of its decisions. The statement of reasons for the first disciplinary action read in its entirety:
 
 
 13
 Based on statements from witnesses, reporting employee verified IDR is correct as written and Investigation notes read.
 
 
 14
 Because this case was decided on a motion under Fed.R.Civ.P. 12(b)(6), the record contains none of the documents or statements mentioned by the Committee in the summary. We therefore have no idea whether the documents mentioned provide one coherent version of events or contradictory accounts. If the latter is the case, then the summary is useless in determining the basis for the Committee's decision, and fails to satisfy the constitutional requirement of a written statement of reasons. Although Alexander did not testify at the hearing, at least one witness was heard at his request, and questions submitted by him were asked of that witness. The record is thus unclear regarding the nature of the proceedings. This uncertainty is crucial because we have stated in a number of cases that the sufficiency of a written statement is to be determined in light of the complexity of the charges and the nature of the evidence in the particular hearing. See Culbert v. Young, 834 F.2d 624, 629-31 (7th Cir.1987); Saenz v. Young, 811 F.2d 1172, 1174 (7th Cir.1987).
 
 
 15
 In this case, the record is insufficient to allow any finding that the statement meets constitutional requirements. The statement itself is cursory and on its face does not provide any insight into the basis for the Committee's decision. In fact, similar statements have been found to be constitutionally deficient by this court. See Redding v. Fairman, 717 F.2d 1105 (7th Cir.1983) (rejecting statements that found guilt "based on all evidence" or based on certain reports); Chavis v. Rowe, 643 F.2d 1281, 1287 (7th Cir.1981) (rejecting as insufficient a Committee's report which stated: "We recognize and consider the resident[']s statement[ ,] however[,] we accept the reporting officer[']s charges"); Hayes v. Walker, 555 F.2d 625 (7th Cir.1977) (rejecting statement of reasons as deficient because it merely incorporated the violation report and special investigator's report). The only way in which the statement can be found constitutionally sufficient is if the record of the hearing indicates that the charges and evidence were straightforward, such that the basis for the decision is clear in light of the evidence. The hearing in this case may well present such a situation, especially given that Alexander did not testify at the hearing. This record, however, is insufficient to support such a determination at this time. We have none of the documents referred to in the summary, and are thus faced with the type of adoption of reports and witness testimony that we have repeatedly rejected as insufficient. Accordingly, the case must be remanded for further factual development which may affect the constitutional analysis.
 
 
 16
 The statement of reasons for the second hearing was only slightly more detailed, and states in its entirety:
 
 
 17
 Based on a review of Sgt. Funai's IDR, hearing notes and a review of Inmate Alexander's written prepared text the Committee found conflicting evidence/testimony on behalf of Inmate Alexander and therefore finds sufficient evidence to support the charges.
 
 
 18
 It is illustrative of the problem that one can read the entire summary from this hearing as well as the last one and still have no idea what incident(s) formed the basis of the charge(s). By acknowledging contradictory evidence but finding Alexander guilty, the Committee in the summary implicitly credits adverse evidence over evidence favoring Alexander. This at least provides some understanding of the Committee's decision. Once again, however, the nature of the proceedings and the testimony presented is important to a determination of the sufficiency of the written statement. Because the Committee merely set forth the testimony and declared that sufficient evidence supported the charges, the complexity of the issues and the clarity of the testimony are important in determining whether the summary is sufficient.
 
 
 19
 The final claim is that defendants violated Alexander's first amendment right to free exercise of religion by ?? sing to allow him to participate with other Muslims in Congregational Prayer and Worship Services as well as the Ramadan Celebration of the Feast of Fast Breaking, Id-ul-Ftr. Alexander argues that defendants could have easily accommodated his religious practices by instituting the same policies employed for providing inmates in disciplinary segregation with group exercise. See Woods v. O'Leary, 890 F.2d 883, 885 (7th Cir.1989) (focus in free exercise challenge is whether prison regulation is reasonably related to legitimate penological interest). He also argues that inmates in administrative segregation are accorded daily group exercise, and that similar provision could be made for religious practice. In support of his argument, Alexander points to Young v. Coughlin, 866 F.2d 567 (2d Cir.1989), in which the Second Circuit considered restrictions which prevented inmates in disciplinary segregation from attending religious services. The court held that the prison officials must provide a justification for the restriction that was related to legitimate penological interests.
 
 
 20
 Because this case was dismissed at an early stage, the district court has not yet had the opportunity to make factual findings regarding any legitimate interests defendants might provide to justify the alleged restriction on religious practices. Without those findings, however, Alexander has adequately alleged a constitutional violation. He has indicated that inmates in both administrative and disciplinary segregation are allowed to engage in group exercise, and has asserted that the same provisions could be made to allow attendance at religious services. The prison officials may be able to indicate reasons why such an accommodation might be unreasonable, but at this stage of the proceeding the reasonableness of the proposed alternative remains an issue.
 
 
 21
 Accordingly, the decision of the district court is AFFIRMED in part and VACATED in part and the case REMANDED for further proceedings consistent with this order.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record
 
 
 **
 Pursuant to Fed.R.App.P. 43(c)(1), Howard A. Peters, III, has been substituted for Michael Lane
 
 
 [1]
 Defendants characterize the segregation as administrative rather than disciplinary, and Alexander does not directly contest that characterization. That assumption is also supported by 20 Ill.Admin.Code Sec. 504.40, which provides for administrative segregation pending a disciplinary hearing. Alexander's claim appears to be that the disciplinary hearing, when given, did not afford due process
 
 
 [2]
 We note that the extent of the procedural protection required is not determined by the language or procedures provided in the regulations. Instead, the appropriate focus is on the extent of the deprivation threatened, see Gilbert, slip op. at 2, and the basic requirements of a fair hearing recognized in application of the due process clause to other contexts, see Wolff, 418 U.S. at 563-69